Robert E. KEENER

v.

**SIZZLER FAMILY STEAK HOUSES.**

No. CA 3–6819–C.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 17, 1977.

Bennie R. Juarez, Joseph M. Revesz, Thomas L. Cantrell, Dallas, Tex., for plaintiff.

Rodney K. Caldwell, Arnold, White & Durkee, Houston, Tex., V. Bryan Medlock, Richards, Harris & Medlock, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiffs filed this action against Defendant seeking to recover damages for breach of contract and for violations of Federal antitrust laws. After trial to the Court, it is adjudged that Defendant is liable to Plaintiffs in the amount of $10,000 for breach of contract but that Plaintiffs have failed to prove their antitrust allegations by a preponderance of the evidence.

Plaintiffs in this action are Robert Eugene Keener, an individual, and two closely held corporations: Keener Restaurants, Inc., and Leen-Keen Incorporated. All plaintiffs are Texas domiciliaries in the business of restaurant management. Defendant is a California corporation with its principal place of business in California. Defendant owns and franchises Sizzler Steak Houses throughout the United States.

Plaintiffs have had two different franchise agreements with Defendant. The first of these was entered into in 1965 with respect to Plaintiffs' restaurant in Farmers Branch, Texas, and is involved in this suit only in connection with the allegation of price fixing.

The second contract between Plaintiffs and Defendant was the franchise agreement for the North Dallas Sizzler which was executed on December 13, 1967. This agreement was revised in March of 1968 at which time a five-mile radius of exclusive operation was granted. This North Dallas restaurant was operated by Plaintiffs through Keener Restaurants, Incorporated.

In late 1968, the Defendant corporation was purchased by an investment group headed by Mr. Rush Backer who became President of the corporation. The evidence establishes that the agreement for the North Dallas restaurant including the five-mile radius provision was valid and was effectively adopted by the new management of the Defendant corporation.

Although Plaintiffs consistently operated successfully at their Farmers Branch location, the Keener Sizzler in the promising North Dallas territory proved to be a losing proposition and was finally closed in January of 1971. Prior to the closing of the North Dallas unit, Mr. Rush Backer, President of the Defendant corporation, recognized the business potential of the densely populated and prosperous territory within Keener's five-mile radius and as early as 1970 had attempted to strike a deal with Plaintiffs to permit the opening of company-owned units within Plaintiffs' territory. Upon being refused by the Keeners, Backer wrote an internal memorandum asking his subordinates to keep him advised whenever the Keeners should fall behind on royalty payments.

After Plaintiffs closed their North Dallas store in early 1971, they advised Backer that they were planning to open a new unit in the territory within a year as required by the franchise agreement. In another internal memorandum, Backer noted prior to Mrs. Keener's visit to California to discuss reopening: "I plan to take a very firm position with her [Mrs. Keener] whereby we obtain the territory free and clear without any reservations. Whether or not any financial consideration is paid is yet to be determined. I will be governed by the

wording of the franchise agreements . . . ."

■ The intent was clear and the series of acts that followed demonstrated that while Backer did limit his actions to the *wording* of the agreements, he neglected to note that "an implied provision of every contract is that neither party to the contract will do anything to prevent performance thereof by the other party or commit any act that will hinder or delay performance." *Peter Kiewit Sons' Co. v. Summit Construction Co.*, 422 F.2d 242, 257 (8th Cir., 1969). This same principle of contract law has been recognized in Texas; *City of Houston v. Howe & Wise*, 323 S.W.2d 134 (Tex.Civ.App.1959).

First, Defendant's President attempted to discourage Plaintiffs from opening a new restaurant telling them in a March 1971 telephone conversation that they were too old to undertake such an enterprise. Defendant next informed Plaintiffs that any new unit would have to be in a building constructed in compliance with plans and specifications for the so-called "new-image" Sizzler, the construction of which cost nearly three times as much as the "old-image" buildings which were acceptable to Defendant at the time the original franchise agreement between Plaintiffs and Defendant was signed.

By letter of April 3, 1971, Defendant advised Plaintiffs that they would have to prove cash value of $50,000 and net worth of $200,000 to open a new North Dallas location. Further, Plaintiffs would be required to use a particular building contractor who had assisted in the development of the plans for the "new-image" buildings.

When Plaintiffs persevered in their efforts to open a new North Dallas unit, Defendant declined to make available the plans and specifications for a "new-image" building. Without such plans, Plaintiffs were unable to proceed effectively in their efforts to secure necessary construction financing.

■ Defendant's withholding of permission and cooperation from Plaintiffs was unreasonable, hindered performance of the contract, and therefore constituted breach of contract. As to the extent of damages, the proper measure would be the value of the North Dallas franchise which reverted to the Defendant as a result of the breach. In this connection, the original franchise fee was $3,500, but Plaintiffs were offered $10,-000 for the franchise by a third party and it is the opinion of the Court that this $10,000 offer constituted the fair value of the franchise at the time of the breach.

Plaintiffs cite the value of a "going Sizzler in a good location in North Dallas" as being $220,000 in 1971 and $450,000 in 1976. There was, of course, no going business as of 1971, only the franchise itself. Further, this Court cannot speculate about what Plaintiffs could have earned if they had been able to establish a new business in North Dallas. The fact that Plaintiffs had and continue to operate a successful restaurant in Farmers Branch does not entitle us to say that a new North Dallas location would have been similarly profitable.

■ Plaintiffs' final claim for damages under the contract theory is for equipment and materials rendered surplus by their inability to open a new restaurant in North Dallas. In accordance with established contract principles, however, there is no indication that these consequential damages were reasonably forseeable to Defendant or that Plaintiffs at any time made known to Defendant the possibility of such losses. Further, there is not a sufficient showing that Plaintiffs endeavored to liquidate these surplus items in mitigation of damages.

■ Turning to the antitrust claims, Plaintiffs contend that Defendant's policy of using its designated construction contractor for new buildings constituted unlawful tying. If so, it is a different form of tying from any that this Court has been able to find in the cases. Here, there is no evidence that Defendant had any interest whatsoever in the construction business as would seem to be required by *Crawford Transport Co. v. Chrysler Corp.*, 338 F.2d 934 (6th Cir. 1964). Rather, the Court finds

that the only reason for the arrangement between Defendant and the construction contractor was that the contractor had significant experience in the construction of "new-image" buildings. Even if there was a true tying arrangement, however, the Court finds that the company-designated contractor would have been able to complete construction at a lower cost to the Plaintiffs than would a local contractor. We are unable, therefore, to see that Plaintiffs suffered any damages.

As to the price fixing claims, this Court is satisfied that Defendant's pricing policy was intended solely to suggest prices for products as an aid to franchises. There is no preponderance of evidence to show that Defendant took any affirmative steps of a coercive nature to enforce recommended retail prices. *Gray v. Shell Oil Co.*, 469 F.2d 742 (9th Cir. 1972). In addition, Plaintiffs have failed to establish any damages as a result of Defendant's pricing policies. *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690 (5th Cir. 1975).

Plaintiffs are requested to prepare and submit an appropriate form of judgment.