**COTTON BROTHERS BAKING COMPANY, INC.**

v.

**INDUSTRIAL RISK INSURERS, et al.**

**Civ. A. No. 83–0150.**

United States District Court, W.D. Louisiana, Alexandria Division.

May 5, 1988.

On Motion for New Trial July 26, 1988.

---

Dando B. Cellini, J. Forrest Hinton, Dermot S. McGlinchey, and Alexander M. McIntyre, Jr., McGlinchey, Stafford, Mintz & Cellini, New Orleans, La., Frederick B. Alexius, Provosty, Sadler & Delaunay, Alexandria, La., for plaintiff.

P. Albert Bienvenu, Jr. and John W. Waters, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, La., and Gist, Methvin, Hughes & Munsterman, Howard B. Gist, Jr., Alexandria, La., for Indus. Risk Insurers, et al.

Phelps, Dunbar, Marks, Claverie & Sims, Esmond Phelps, II, New Orleans, La., for Baker Perkins, Inc.

### RULING

NAUMAN S. SCOTT, District Judge.

Now before us for decision are two motions made by plaintiff, Cotton Brothers Baking Company, Inc.

The first, Plaintiff's Motion to Introduce Insurance Policy Endorsements into Evidence, was made orally during trial.[1] The Court agreed, at the request of Industrial Risk Insurers (IRI) without objection from Plaintiff, to postpone its ruling regarding

---

1. *See* Transcript of November 10, 1986, Vol. 14, p. 2970.

the admissibility of the endorsements until the time that parties filed written briefs on the issue.[2] The second motion, Plaintiff's Motion to Permit Filing of Second Supplemental and Amended Complaint, was filed post-trial on November 3, 1987. IRI has filed written opposition to both motions.

The evidence establishes that:

(1) Prior to April 1977 IRI provided interruption of business insurance coverage for various of the Cotton Bros. bakeries. Originally, IRI provided separate policies for the bakeries, but in time, insured all the bakery operations under one policy.[3]

On October 1, 1980 IRI issued a new interruption of business policy to provide coverage for the Cotton Bros. bakery operations as they were being operated at that time (see paragraphs (2), (3) & (4) below). Cotton Brothers, Inc. was not a named insured in the policy. Instead, IRI continued to insure the bakeries as if the creation of Cotton Brothers, Inc. and the reorganization of the Cotton Bros. bakery operation had never occurred. The named insureds were three of the subsidiary bakeries in the Cotton Bros. bakery operation which were located in Alexandria, Shreveport, and Natchez—"COTTON BROS. BAKING COMPANY, INC., COTTON BAKING COMPANY, INC., and COTTON'S HOLSUM BAKERS, INC." The policy is ambiguous in that it describes five locations (Alexandria, Shreveport, Natchez, Baton Rouge, and Monroe) and provides that the loss at any of these locations shall be adjusted with and payable to the subsidiary bakery corporation located at the site of the loss. Separate coverage amounts were assigned to each location aggregating on October 1, 1980 to $39,816,000.00.[4]

(2) On October 1, 1980 Cotton Bros., Inc. was a corporation located in Alexandria, Louisiana and conducting a very substantial and successful bakery business in north, central and southeast Louisiana and in portions of the surrounding states.

(3) Cotton Bros., Inc. conducted its business through eight wholly-owned subsidiary corporations: five bakery corporations (located in Alexandria, Shreveport, Baton Rouge and Monroe, Louisiana, and in Natchez, Mississippi); an insurance corporation which administered Cotton's insurance responsibilities and did no business with the general public; a transportation corporation which acquired vehicles required by the parent corporation, Cotton Bros., Inc., and its subsidiaries; made these vehicles available to those corporations by means of contract and did no business with the general public; and a procurement corporation which did no business with the general public and which acquired and distributed supplies and raw materials including those required by the five bakeries.

(4) Beginning about 1976 the Cotton companies began a process of reorganization which had taken form and was complete prior to the issuance of IRI's interruption of business policy on October 1, 1980. A parent company, Cotton Brothers, Inc., was incorporated and began business on or about 1976 and soon thereafter the three non-bakery subsidiaries described above in paragraph (3) were created to perform for the single Cotton Bros. bakery business services which the subsidiary bakeries had formerly performed for themselves. The operations of the previously independent bakeries (finally 5 in number) experienced a series of modifications, under the direction of the parent company which actually dictated the day-to-day operations of these bakeries. In this reorganization the subsidiary bakeries, as described below, lost completely their independent character, though they continued to exist as separate corporations, and became, with the three non-bakery subsidiaries, parts of the single integrated Cotton bakery operation under the direction and control of the

---

**2.** *Id.* at 2993–99.

**3.** *See* Transcript of November 10, 1986, Vol. 14, pp. 3031–33; Plaintiff Exhibit No. 461–B (referring to Business Interruption Policy No. 31–7–

47999 and admitting that its policy provides "blanket coverage" for Cotton Bros. bakeries).

**4.** *See* IRI Exhibit 200.4 at pp. 1 & 1A of Form E.

parent company.[5]

There was but one "business"; that business was performed by Cotton Bros., Inc., the parent corporation. Cotton Bros., Inc., operated, directed, and controlled the eight wholly-owned subsidiaries as a single, combined endeavor. The president and chief operating officer of the parent corporation, R. Gene Cotton, was also president and chief operating officer of each of the eight subsidiary corporations. None of the contracts between the eight subsidiaries were arms-length transactions concluded by separate officers motivated by the separate and independent interest of each subsidiary corporation, but rather by the interest of the parent, Cotton Brothers, Inc., the single combined operation. The same is true regarding all contracts between the parent corporation and any one or more of the subsidiary corporations. In every one of these instances, Gene Cotton, wearing one hat, was doing business with Gene Cotton, wearing another hat. Transactions of that nature, as reflected on the corporate records of each subsidiary, certainly cannot form a valid basis for the determination of gross earnings.[6] Not only were all routine policy decisions of the subsidiaries made by the chief operating officer of the parent corporation, but a substantial portion of the accounts payable by each of these subsidiaries were paid out of a general account in the sole name of the parent corporation. An obvious instance is the Baker Perkins contract with plaintiff (the Alexandria subsidiary). Payment for the replacement machinery and for the construction work was made out of the parent corporation's account, even though the installed machinery and equipment became part of the physical plant owned by the Alexandria subsidiary.

To compete successfully in the market and to meet its competition, it was necessary to produce not only a full range of different bakery products but every marketable type of each product. Thus, it was necessary to produce many different types of breads, buns, rolls, brown & serve goods, and sweet goods, including sweet rolls, breakfast rolls, danish, pastries, cakes, pies, etc. The evidence is uncontradicted that not one of the subsidiary corporations operated independently or had its separate chief operating officer. Not one competed independently against the others or against outside competition. Although each of the subsidiary bakeries was a production company operating seven days a week, baking today for sale tomorrow to Cotton Bros. customers, not one of them produced the entire range of products which were sold to Cotton Bros. customers. For instance, the Natchez plant produced all the sweet goods sold to Cotton Bros. customers in Natchez, New Orleans, Baton Rouge, Alexandria, Monroe and Shreveport. Since the Natchez plant produced nothing but sweet goods, Cotton Bros. customers in the Natchez area received all types of bread loaves, rolls, brown & serve, etc. which were baked in either the Baton Rouge, Alexandria, Monroe or Shreveport bakeries and trucked to the Natchez area. The same is true regarding the other bakery locations so that all five bakeries worked in combination to produce the goods which were sold to Cotton Bros. customers in each of the areas where Cotton Bros. competed.

■ There is not a single item in the evidence, except that the subsidiaries were separate corporations, which establishes or implies that there was a separate and independent business carried on by the Alexan-

. *See* IRI Exhibit 986 "Revised Business Interruption Insurance—Cotton Brothers, Inc. and Subsidiaries—May 31, 1983."

. IRI continues to urge that Cotton Brothers, Inc. had no insurable interest in Cotton's bakery business on October 1, 1980 and that semi-annual statements of the gross earnings submitted to IRI by the separate subsidiary bakeries proves that these bakeries were in fact separate businesses. IRI produced no evidence to establish this contention. Actually the time, the types of content desired and purpose of these statements were dictated by IRI. They had issued a policy to five different subsidiary bakeries and IRI required a basis for the amount of coverage and amount of premium allocated to each. IRI furnished semi-annually the IRI forms utilized to draft these statements and the evidence fails to demonstrate that they had any other purpose than IRI use of them as above described.

dria subsidiary or any of the other subsidiary bakeries. Certainly, the fact that IRI wrote its policy as if these were separate corporations, conducting separate businesses independent of any guidance, control or interest of the parent corporation, cannot be accepted as proof that they did in fact operate as separate corporations. We hold, on the record now before us, that the five subsidiary bakeries were on October 1, 1980 parts of one single bakery operated, owned and controlled on a day to day basis by the parent corporation, Cotton Brothers, Inc.

(5) IRI is not obligated to honor every application it receives for interruption of business coverage. It requests information and makes an investigation of any business making application for such coverage, and will accept the coverage only if it is satisfied by the information it has obtained and the investigation it has conducted. There has been no complaint from IRI regarding the information furnished or the investigation made prior to the issuance of IRI's October 1, 1980 policy. IRI either knew or should have been fully informed of the single bakery business operated by Cotton Brothers, Inc., that the subsidiaries were only component parts of that single endeavor, that none of the five subsidiary bakeries was an independent business as each had been prior to the reorganization by Cotton beginning on or about 1976. As a matter of fact, correspondence between Roscoe Bolton, Cotton's agent, and IRI's representative, John Penn, in April 1977[7] discloses that IRI was at that time Cotton's insurer; that IRI was aware that the subsidiary bakeries no longer operated independently and that the policy or policies then in effect afforded blanket coverage to the bakeries. We find further that the record fails to disclose any operational changes in the Cotton Bros. bakery busi-

ness between October, 1980 and July 28, 1982.

(6) The record is replete with evidence that IRI had full and complete notice long before the commencement of trial in October 1986 of Plaintiff's contention that the parent company should be a party to this lawsuit, that there were not five independent businesses owned by such of the bakery subsidiaries, but one single business owned and operated by the parent, Cotton Brothers, Inc., and that Cotton would rely principally on evidence shown by the books of the parent corporation as a basis for its suit. Plaintiff in fact filed a motion on April 28, 1986 to make the parent corporation a party plaintiff in this proceeding.[8] That motion induced instant response from IRI's counsel in the form of a letter to the Court dated May 1, 1986, wherein IRI vigorously opposed the motion for essentially the same reason that it now opposes plaintiff's motion of November 3, 1987.[9] Actually, at the time this motion was filed, the Court did not have before it the evidence necessary to consider this motion or to support any affidavits which may have been submitted in connection with the motion. If, for this reason, the Court had denied the motion in April 1986, it would not now hesitate, in view of the overwhelming evidence establishing the compelling interest of Cotton Brothers, Inc., to entertain a motion to reconsider and reverse its original ruling.

During many of the Court's conferences with the parties, before and during trial, both on and off the record, the issue of whether plaintiff could use the parent corporation's books to show its damages was the subject of earnest and sometimes heated discussion. A copy of the business interruption policy containing the endorsements of September 26, 1981 and July 28, 1982 was provided to us prior to trial.[10]

---

7. *See* Plaintiff Exhibit 461–A and 461–B (admissions to IRI that the policy or policies in effect in April 1977 afforded blanket coverage to the bakeries.

8. Pleading Nos. 168–171 in the Record.

9. Pleading No. 178.

10. *See* Exhibit A, IRI's Motion for Partial Summary Judgment filed July 14, 1986 (Document Nos. 187–189). Introduction of these endorsements by plaintiff was also frequently discussed with the parties. The Court itself initiated several of these discussions. *See, e.g.,* Transcript of October 29, 1986, Vol. 6, pp. 1000–03 (Initial discussion prompted by parties); Transcript of

The Court indicated that the policy endorsements were relative to this and other issues and that these issues were "up for grabs"—the Court was "looking for answers".[11]

Throughout the trial and the discussions with the Court, and again in its opposition to the motions before us, IRI has insisted that only the policy, as written at the time of the fire, could be admitted, and only elements of loss that were "directly connected to the fire" could be recovered. As we came to know the facts during trial (that neither Alexandria or any of the other subsidiaries conducted a separate and independent business), we had serious reservations about IRI's argument, particularly in view of the two endorsements that had been added to the insurance policy. We asked questions repeatedly of IRI. How could IRI provide interruption of business coverage to Cotton Bros. bakery business on October 1, 1980 by continuing to name the five subsidiary bakeries as insureds as if they still operated separate and independent baking businesses which, through reorganization and the creation of Cotton Brothers, Inc., had ceased to exist? How could loss of gross income experienced by the Cotton Bros. bakery business be determined by examining only the books of the Alexandria subsidiary or, indeed, all five of the subsidiaries? The evidence, as we already have demonstrated, establishes beyond all doubt that these books could not be used to determine gross earnings of the subsidiaries themselves, much less those of the Cotton Bros. bakery businesses. We requested IRI to provide answers to these questions. We expected to hear testimony explaining the coverage which IRI provided by the October 1, 1980 policy and IRI's explanation for issuing the September 26, 1981 and July 28, 1982 endorsements. IRI has offered no such explanations. In discussion on November 10, 1986 IRI's counsel did observe that, in the event we considered admitting the endorsements, it would "have to bring a raft of underwriters" to explain their purpose.[12]

■ (7) As written, the October 1, 1980 policy at the time of the fire on February 13, 1981 named only bakery subsidiaries as named insureds and it provided that only the Alexandria subsidiary was a named insured for a "loss" at the Alexandria plant.[13] This provision was broadened by the September 26, 1981 endorsement to include damages suffered by other subsidiary bakeries by an occurrence at the Alexandria plant. In the absence of any evidence to the contrary this endorsement indicates, or is an admission by IRI, that the subsidiary bakeries were not operating as separate and independent bakery businesses and that Cotton's bakery operations were not insured therefore as the parties intended.

■ (8) As we have found previously, there is no evidence that the Cotton bakery operation (the interruption of business risk) on October 1, 1980, the date of issuance of the policy, was any different from the bakery operations by the same parties at the time of the amendment of July 28, 1982. In the absence of evidence to the contrary,[14] this endorsement can be and probably should be considered an admission by

---

November 10, 1986, Vol. 14, pp. 2970–99 (Offer of endorsements into evidence by Plaintiff and agreement that matter would be taken under advisement); Conference in Chambers off the record November 26, 1986 (Court initiated discussion, inquiring why the parent corporation was not made a named insured prior to the fire).

**11.** Transcript of December 11, 1986, Vol. 33, pp. 7264–66 (Court initiated discussion regarding the admissibility of the policy endorsements and the effect of the endorsements as evidence in the case); Transcript of December 17, 1986, Vol. 37, pp. 8473–74 (Record kept open to allow briefs addressing the admissibility of the policy endorsements).

**12.** Transcript of November 10, 1986, Vol. 14, p. 2994.

**13.** *See also* Transcript of November 10, 1986, Vol. 14, pp. 2978–89; Plaintiff Exhibit Nos. 461–A & 461–B (Admissions by IRI that its policy provides "blanket coverage" for the Cotton Bros. bakeries).

**14.** The Court mentioned several times that in considering the admissibility of the policy endorsements that it expected to admit the amendments if IRI did not produce underwriters to educate the Court on the question.

IRI that Cotton Brothers, Inc. should have been the named insured on the policy as issued originally on October 1, 1980. Stated in other words, the endorsement is an admission by IRI that the interruption of business risk sought to be covered on October 1, 1980 as the parties intended, was not properly covered until the issuance of the endorsement of July 28, 1982 which made Cotton Brothers, Inc. a named insured.

■ (9) We now consider Plaintiff's Motion to Permit Filing of Second Supplemental and Amended Complaint. We must keep in mind that "Every action shall be presented in the name of *the real party in interest*," Fed.R.Civ.P. 17, and that "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ. P. 21.

(10) Fed.R.Civ.P. 15 controls the amendment of pleadings. Fed.R.Civ.P. 15(a) provides in part that "... a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires...."

It is well-settled that "grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77, 87 (1971). Such leave, by the terms of Rule 15(a) and a legion of caselaw, "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see* 6 Wright & Miller, *Federal Practice and Procedure* § 1484 (1971).

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc.—the leave sought should, as the rules require, be 'freely given.' "

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962). The court "may also consider whether undue prejudice to the movant will result from denying leave to amend." *Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391 (5th Cir. 1981) (citations omitted). It is *undue* delay, not mere passage of time, which forecloses amendment. In *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir.1981), the Fifth Circuit stated:

In our review of the trial court's exercise of discretion, rule 15(a), of course, provides a starting point. 'Discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.' It evinces a bias in favor of granting leave to amend. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.... Thus, *unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial....* [M]ere passage of time need not result in refusal of leave to amend; on the contrary, it is only *undue* delay that forecloses amendment. *Amendment can be appropriate as late as trial or even after trial; see* 6 C. Wright and A. Miller, Federal Practice and Procedure § 1488 (1971); *see also* Fed.R.Civ.Pro. 15(b). *Instances abound in which appellate courts on review have required that leave to amend be granted after dismissal or entry of judgment.*

*Id.* at 597–98. [Citations omitted; emphasis ours].

We find much of the delay involved here is due to objections of IRI, principally its request to the court to delay consideration of IRI's objection to the admission of the amended policy. As related previously, the admission of Cotton Brothers, Inc. could have been considered and allowed long prior to the commencement of trial and as

early as April 28, 1986 (see paragraph 6 above) but for objections by IRI. Denial of the motion to amend may permit IRI's technical advantage of completion of the trial without participation by the real plaintiff at interest in blatant violation of Fed.R.Civ.P. 17. Such denial could undoubtedly be a basis of a motion for new trial. In circumstances such as this our discretion is "not broad enough to permit denial." The motion is granted under authority of Fed.R. Civ.P. 15(a).

(11) Like Rule 15(a), Rule 15(b) is "designed to facilitate decision of claims on their merits rather than on procedural technicalities." *Jimenez v. Tuna Vessel GRANADA*, 652 F.2d 415, 420 (5th Cir.1981) (footnote omitted). "The prime purpose of 15(b) is to avoid the necessity of new trials." *Falls Industries, Inc. v. Consolidated Chemical Industries, Inc.*, 258 F.2d 277, 285 (5th Cir.1958); *see also* 6 Wright & Miller, *supra* at § 1491. It encourages a court to consider requests to amend favorably, in particular, when "it becomes necessary to adjust the pleadings to reflect the case as it actually was litigated in the courtroom." 6 Wright & Miller, *supra* at § 1491.

"To effectuate the policy underlying Rule 15(b) and in recognition of the spirit of the Federal Rules of Civil Procedure, [the Fifth] Circuit has pursued 'a course of strong liberality ... in allowing amendments.'" *Mineral Industries & Heavy Construction Group v. Occupational Safety and Health Review Commission*, 639 F.2d 1289 (5th Cir.1981) (quoting *United States v. Stephen Brothers Line*, 384 F.2d 118 (5th Cir.1967)).

Fed.R.Civ.P. 15(b) affords two precedures. The first portion allows amendment to conform with the evidence which has been allowed by consent and without objection by the parties. This remedy is not pertinent here where, as IRI has observed repeatedly, IRI did object. The second portion provides the pertinent remedy as follows:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Fed.R.Civ.P. 15(b).

Thus, when presentation of the merits is 'subserved' and the objecting party fails to show 'prejudice,' the court may, in its discretion, permit an amendment. *See Roberts v. Williams*, 456 F.2d 819 (5th Cir. 1971), *cert. denied*, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971).

The last two sentences of Rule 15(b) prescribe the procedure to be followed if there is an objection to the introduction of evidence on the ground that the material offered is not within the issues framed by the pleadings. This portion of the rule admonishes the court that amendments should be allowed freely whenever the presentation of the case's merits will be subserved thereby. Thus, an amendment will be granted unless the party objecting to the evidence persuades the court its admission will prejudice him in maintaining his claim or defense.

To justify the exclusion of the evidence, the rule contemplates that the objecting party must be put to some serious disadvantage; it is not enough that he advances an imagined grievance or seeks to protect some tactical advantage. Thus, a claim of surprise that is not borne out by the facts or an objection to a mere technical addition to the theory of the claim for relief or the facts on which it is based, or a change in the nature of the defense typically will not entail sufficient prejudice to warrant the denial of a motion to amend ... Thus, Rule 15(b) requires that the party opposing the amendment be seriously prejudiced in the presentation of his action or defense on the merits. Absent a showing of this character, the court should grant leave to amend and allow evidence on the newly raised issue

to be introduced. The district court's failure to do so may constitute an abuse of discretion and be a basis for reversal. 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1495, pp. 478–80 (1971).

These principles were recognized by the Fifth Circuit in *Crossland v. Canteen Corp.*, 711 F.2d 714 (5th Cir.1983):

> The plaintiffs' final contention is that the district court improperly denied them leave to file a mid-trial amendment to the complaint that would establish the Texas law prerequisites for recovery of attorneys fees on their contract claim. This was an abuse of the district court's discretion. Fed.R.Civ.P. 15(b) states that when a party objects to a mid-trial amendment, 'the court may allow the pleadings to be amended and shall do so freely when ... the objecting party fails to satisfy the court that the ... [amendment] would prejudice him in maintaining his ... defense upon the merits.' The only prejudice claimed by Canteen is that it may become liable for attorneys fees. This is insufficient. [citations omitted]. The plaintiffs should have the opportunity to amend their pleadings and prove that they are entitled to attorneys fees on this claim. *Id.* at 729.

*See also Crossland v. Canteen Corp.*, 711 F.2d 714 (5th Cir.1983). Even if actual prejudice is shown, the court may, by granting a continuance, or by allowing additional time to present new evidence, still permit the amendment. *See Oppenheimer Mendez v. Acevedo*, 512 F.2d 1373, 1374 n. 1 (1st Cir.1975).

Therefore, under Rule 15(a) and (b) and the evidence as we have described, we must allow the November 3, 1987 amended complaint and we must admit the policy as amended by the two endorsements. Justice requires that we do so. Our ruling will do nothing more than allow Cotton Bros. the opportunity to seek full recovery on the risk it sought to insure. This was the burden IRI was expected to assume. As shown previously, our action herein is not prejudicial to IRI, whereas, on the other hand, sustaining IRI's opposition would be highly prejudicial to plaintiff. Since this proceeding would be tried to completion in the absence of the only party at interest and would risk the filing of a motion for new trial.

We observe further that these amendments, under the provisions of Fed.R.Civ.P. 15(c), relate back to the filing of the original complaint.

Accordingly, and for reasons stated above: The October 1, 1980 policy is admitted as amended on September 26, 1981 and on July 28, 1982. Plaintiff's motion to amend is granted so that Cotton Brothers, Inc. is admitted as a party plaintiff in this suit and the plea for reformation of the October 1, 1980 is allowed and an evidentiary hearing on that issue will be set by the Court at the request of either party.

## ON MOTION FOR NEW TRIAL

Before us for our consideration are defendant IRI's Motion for New Trial of Plaintiff's Motion to Admit Endorsements and of Plaintiff's Motion for Leave to File Second Supplemental and Amended Complaint; Alternative Motion for Certification of Ruling for Interlocutory Appeal, and Request for Oral Argument.

IRI's memorandum in support of these motions and requests are simply a rephrasing and repetition of the arguments advanced in its memorandum of January 15, 1988. They were considered fully by us prior to May 4, 1988 and we adopt and adhere to our Ruling of that date in rejecting those contentions.

The principal issue in this suit is whether the books of Cotton Brothers, Inc. can be utilized to establish the amount of the interruption of business loss suffered as a result of a February 13, 1981 fire in the Alexandria, Louisiana bakery building of Cotton Brothers Baking Company, Inc. and insured by a policy issued by IRI on October 1, 1980. Plaintiff contends that the amount of its loss can be ascertained accurately only through the utilization of its parent corporation, Cotton Brothers, Inc.

IRI contends, as it has throughout the trial, that there are five bakery corpora-

tions owned by Cotton Brothers, Inc. and located at Alexandria, Shreveport, Baton Rouge and Monroe, Louisiana and Natchez, Mississippi; that each bakery on October 1, 1980 conducted a bakery business separate and independent of each other and in competition with each other; that none of them had any common operating connection with an insurance corporation, a transportation corporation and a procurement corporation also owned by Cotton Brothers, Inc.; IRI's policy of October 1, 1980 reflects this concept. That policy, as issued originally, includes as named insureds, only the Alexandria, the Shreveport and the Natchez corporations. It also describes the five bakery locations above referred to and states that any loss of the policy shall be adjusted with and payable to the bakery corporation on whose property the loss occurs. The language is ambiguous but in this instance IRI adjusted the loss with and paid it to the bakery corporation owning the property in Alexandria where the fire occurred. The evidence absolutely denies IRI's contentions. There were in 1980 five subsidiary bakeries, all owned by Cotton Brothers, Inc. The only evidence that each operated a separate and independent bakery business so that interruption of business losses could be ascertained from the books of any one of them is the fact that they were in fact five corporations and IRI insured them as if each of them was conducting a bakery business of its own, separate and independent of the others.

The evidence currently of record shows beyond any reasonable doubt and without contradiction that on October 1, 1980, the effective date of IRI's interruption of business policy, there was but one single bakery business conducted jointly by eight subsidiary corporations, including the five subsidiary bakery corporations, under the direction and control of the parent corporation, Cotton Brothers, Inc. This single bakery business operation came into being in 1976 when there were only four bakeries and when the parent corporation as well as the three subsidiary nonbakery corporations were chartered and began a joint operation as described in more detail in our holding of May 4, 1988. All of this was known or should have been known to IRI when it issued the policy of October 1, 1980. We hold, as we have in our Ruling of May 4, 1988, that IRI should have identified the risk (the single bakery operation conducted by Cotton Brothers, Inc.) and issued a policy to cover that risk. The two post-fire endorsements admitted by us in our previous Ruling totally refute IRI's contentions that the interruption of business loss could be accurately ascertained by the books of any one of the subsidiaries and that Cotton Brothers, Inc. should not have been included as a named insured. As a matter of fact, under the evidence as presently constituted, Cotton Brothers, Inc. is the only proper named insured.

We admit that the parties, principally IRI, should have an opportunity to introduce additional evidence before we consider the question of whether the policy should be reformed to include Cotton Brothers, Inc. as a named insured effective October 1, 1980. The testimony of underwriting experts, as we have stated repeatedly during trial, would be particularly helpful. However, these experts should be able to explain to the Court why in July 1982 IRI should have included Cotton Brothers, Inc. as a named insured under the policy but should not have done so when the policy was issued originally on October 1, 1980. For these reasons:

We DENY IRI's: (1) Motion for New Trial of Plaintiff's Motion to Admit Endorsements and of Plaintiff's Motion for Leave to File Second Supplemental and Amended Complaint; (2) Alternative Motion for Certification of Ruling for Interlocutory Appeal; and (3) Request for Oral Argument.